NEW YORK,<br>May, 1826.

Jackson<br>v.<br>Chapin

---

JACKSON *ex dem.* MONTGOMERY and others, *against* CHAPIN and others, TRUSTEES of the first Presbyterian Society in Rochester.

EJECTMENT for lot No. 61 and 62, and the north half of lot No. 63, in the village of Rochester, in the county of Monroe, tried at the Monroe circuit, April 16th, 1825 before WALWORTH, C. Judge; when a verdict was taken for the plaintiff, subject to the opinion of this court upon a case; which is sufficiently stated in the opinion of the court.

*J. A. Collier*, for the plaintiff.

*P. S. Parker*, for the defendants.

*Curia*, per WOODWORTH, J. It appeared in evidence, that Robb, who was the common source of title, executed a deed to Montgomery, on the 12th of June, 1818, which was recorded on the 25th of March, 1825. The defendant proved that Montgomery said the deed had been offered to him; but he refused to receive it, because Robb's wife was not a party. This being parol evidence, tending to destroy the operation of the conveyance, was inadmissible.

> A judgment is not a lien upon a mere equity; and such an interest cannot be sold on execution. Thus, where R. conveyed lands to B. who held as R.'s trustee; but under an equitable obligation to convey to another; held, that a judgment against R. was not a lien on his interest; and that it could not be sold on execution. A first judge of a county, being a counsellor, &c. of the supreme court, may take acknowledgments of deeds which may be

registered in any county in the state, without a certificate of the county clerk, that he is a first judge.

Parol evidence that a grantee in a deed of land, acknowledged, that, though the deed had been offered to him, he refused to accept the delivery, is inadmissible.

The plaintiff also gave in evidence, a contract from Robb to Montgomery, for the sale of the premises in question, dated June 12th, 1817. On the 15th of April, 1818, Robb assigned the contract to Bemis, subject to Montgomery's article of agreement, which Bemis was to perform, if Montgomery made payment agreeably to his covenant. On the same day he executed a deed to Bemis, with a proviso, subject to the article of agreement to Montgomery. The deed was recorded March 5th, 1822, on the certificate of N. W. Howell, first judge of Ontario. a counsellor of this court which was sufficient, he being *ex officio*, a commissioner to perform certain duties of a judge of the supreme court. No certificate of the clerk of Ontario was necessary to warrant the registry. At the time of receiving the assignment, Bemis executed a writing under seal to Robb, stating that the transfers were made to him as security; that he was to account for all money received of Montgomery, or on a resale, after satisfying his responsibilites; and if Robb should pay off the notes endorsed by Bemis, he would re-convey. Subsequently, Bemis was fully exonerated. On the 12th of July, 1818, Robb wrote to Bemis, to assign over and deliver the bond, (meaning the contract,) to Strong and Clark, which he accordingly did, on the 14th of July, 1818.

Clark assigned his interest, December 23d, 1818, to Fellows and McNab; Strong, about the same time, transferred his interest to the same persons; and the contract was delivered; but he did not make an assignment in writing, until April, 1825. Strong testified that he received the assignment in payment of a debt from Robb, as so much cash.

From the facts stated, it appears that Bemis, after he was relieved from his responsibility as surety, held the deed and contract as a trustee for Robb; and was bound to comply with the directions of his *cestui que trust*. He accordingly assigned the contract to Strong and Clark. They became entitled to all benefit to be derived from it; and although Bemis did not convey the land at the same time he was bound to do so, on request; for I consider Strong and Clark as acquiring all Robb's right and interest; and entitled to receive a deed also from Bemis; and thereby placed in a sit-

uation to convey to Montgomery, provided he made payment. It seems, however, the legal title remained in Bemis, until Fellows and McNab applied for a deed, they having succeeded to the rights of Strong and Clark. The letter of Robb to Bemis, March 5th, 1820, seems to warrant the inference, that he was willing that Bemis should convey to Fellows, on his receiving the balance due to him from Robb. The letter is not explicit; but this is manifestly the intent. Why Robb interfered at all, after he had parted with his interest to Strong and Clark, does not appear. Bemis received 20 dollars of Fellows, as a balance due from Robb to him, and conveyed to Fellows and McNab. They afterwards, on the 5th August, 1822, conveyed to Montgomery. Thus the legal estate, and, (for aught I perceive,) the equitable also, is vested in Montgomery, one of the lessors of the plaintiff.

The defendant's title is under a judgment of Hale against Robb, which was docketed the 30th of August, 1819; by execution upon which, the premises in question were sold to Wadhams. Before that judgment was entered, the title had been conveyed to Bemis, who passed it to the plaintiff. Bemis, it is true, stood in the relation of a trustee to Robb; but that fact made out an equity merely. The judgment, in consequence of this, did not become a lien at law. Robb had neither the legal title nor possession. The judgment could not attach upon a mere equity. The sale under it conferred no title. The right of Robb was not a subject of sale. Wadhams, who purchased, was informed of the trust and took subject to it. When he conveyed to Scofield, the land was held adversely by Montgomery. I do not, however deem it necessary to examine all the questions raised in this cause; in as much as the lessors of the plaintiff, some or one of them, have a legal seisin of the estate derived from Bemis. He was seised by virtue of a conveyance from Robb, executed before the entry of Hale's judgment, under which the defendants claim. The deed to Bemis was recorded before the sheriff's deed to Wadhams; so that, whether the judgment was a lien or not, becomes im-

NEW YORK,
May, 1826.

material, the plaintiff still being first in point of time.　The plaintiff is entitled to judgment.

Judgment for the plaintiff.