Doe ex dem. Davis v. McKinney and McKinney.

# DOE ex dem. DAVIS v. McKINNEY AND McKINNEY.

1. Where an action is brought by a purchaser at a sheriff's sale, under a *fieri facias*, against the defendant in execution; the admission of the landlord of the latter, to defend with him, *it would seem* could not prejudice the plaintiff, as the landlord would not be permitted to set up a title consistent with the tenant's possession, to defeat a recovery.

2. *Semble ;* an order permitting the son to defend an ejectment, brought against the father, for the recovery of the possession of lands, to which the former claims title, is unobjectionable.

3. A father purchased land and paid the purchase money, declaring, at the time, that it was for his son, for whom he intended it as an advancement, and four years thereafter he caused the vendor to execute a deed to the son : *Held*, that the son was not entitled to hold the land, against those who became creditors of the father between the time of the purchase and the conveyance.

4. Where one man buys land in the name of another, and pays for it, it will generally be held by the grantee in trust for the person who pays the money; but the inference of a resulting trust is *prima facie* repelled, where the money is paid by the father or husband, and the deed taken in the name of his child or wife But in such case it is open to explanation, and if shown that the father or husband intended to defraud his creditors, he will be deemed to have a *resulting trust*, which may be subjected to the payment of his debts.

5. Since the statute of 1820, a title in lands which is merely equitable, can only be sold for the payment of debts by suit in chancery: consequently, a purchaser under execution where the defendant had only an equitable title, acquires nothing by his purchase; and the law is the same if the defendant was in the possession.

WRIT of error to the Circuit Court of Perry.

This was an action of ejectment for the recovery of the possession of " a certain lot or parcel of land or ground lying in the town of Marion in the county of Perry," which is particularly described in the declaration by metes. An order was made, pending the cause in the Circuit Court, appointing Samuel A. Townes guardian *ad litem* for Wm. H. McKinney, who was admitted to defend as landlord, and thereupon he confessed lease, entry and ouster, and pleaded *not guilty*, and on that plea issue was joined and submitted to the jury. The plaintiff excepted to the ruling of the Circuit Judge. From the first bill of exceptions it appears, that Wm. H. McKinney was admitted a co-defendant

with Wilson McKinney under the following circumstances, viz:
an affidavit was made that the former was the landlord of the
latter and his son, an infant under the age of twenty-one years,
and went into possession with his father in 1836, and so continu-
ed until the fall of 1840—the latter remaining in possession up
to the time of trial.  The plaintiff's lessor claimed the premises
in question as a purchaser under an execution issued against the
property of Wilson McKinney, and for which he had a sheriff's
deed.  To the order admitting Wm. H. McKinney, the plaintiff
excepted.

By the second bill of exceptions it is shown, that the plaintiff
produced and read to the jury a judgment against Wilson Mc-
Kinney, rendered by the Circuit Court of Perry, an execution is-
sued thereon, which was levied on the lot in question, and a deed
from the sheriff to himself as the highest bidder at a sale under
the execution and levy.  The defendant, Wm. H. McKinney,
proved and read to the jury a deed for the same premises to him-
self, made by Henry C. Lea on the 24th April, 1840.  In respect
to this deed, it was proved, among other things, that in the year
1836, Wilson McKinney, being a man of property and unembar-
rassed, made a contract with Henry C. Lea, then the owner of
the lot, for its purchase, and in the course of the year paid him
six thousand dollars therefor.  At the time the contract was
made, Wilson McKinney said to Lea, that he was purchasing
the lot for his son, William H., then a minor fifteen or sixteen
years of age, for the purpose of placing him on an equality with
his other children, to whom he had made advances, and that he
wished the deed made to his son.

Wilson McKinney, shortly after the contract with Lea, and
payment of the purchase money, went into the possession of the
premises, and has retained it ever since—his son the most of his
time residing with him.  Things remained in this situation until
the 24th April, 1840, when the deed was executed by Lea to
William H., as already stated.  It was also shown, that between
the time of the purchase and the execution of the deed by Lea,
Wilson McKinney became very much embarrassed, and at the
latter period was almost, if not quite, insolvent.  The note on
which the judgment was rendered upon which the execution was
issued, and under which the plaintiff's lessor purchased, was

made by Wilson McKinney, or by a mercantile firm of which he was a partner, in the year 1838.

The plaintiff's counsel requested the Court to charge the jury, that if they believed that, at the time the deed from Lea to Wm. H. McKinney was executed, Wilson McKinney, who had paid the purchase money, was insolvent, then the deed to Wm. H. was void as to creditors whose debts existed prior to its date, and that the plaintiff was entitled to recover. This charge the Court refused to give; but charged the jury, that the question to be tried was, who had the older and superior legal title; and that even if the deed from Lea to Wm. H. McKinney, was but a contrivance on the part of Wilson and his son, to make a voluntary gift to the latter (which facts would make it fraudulent and void as to creditors,) that considering the other features of the case, the deed could not be assailed and set aside for that cause in this action; that the deed from Lea to the son, if *bona fide* on the part of Lea, passed the legal title to the son, and if *mala fide* on the part of Lea, it could only be set aside by suit in chancery, to which he would be made a party. To the admission of the deed by Lea in evidence, the refusal to charge as prayed, and the charge as given, the plaintiff excepted.

The jury returned a verdict for the defendant, and a judgment was thereon rendered against the plaintiff for costs.

H. DAVIS for the plaintiff in error, insisted—1. That a sheriff's deed conveys whatever interests a defendant in execution had at the time of the sale under execution, and if the defendant in execution be a tenant, the landlord cannot be let in to defend an action brought for the recovery of possession. [2 Porter's Rep. 480; 10 Johns. Rep. 223; 1 Wend. Rep. 103. See also Adams on Ejectment, 227; Lawson v. Orear, 4 Ala. Rep. N. S. 156; 5 Stew. & P. Rep. 426.]

2. A father, largely indebted, cannot voluntarily convey away his estate directly or indirectly, so as to defeat his creditors; and that a transaction which would defraud creditors when consummated according to the usual course of dealing, cannot be legalized by circuity or contrivance. A tenant in possession who has paid the purchase money, under a contract in his own name, has a legal estate, subject to sale under an execution. [3 Porter's Rep. 196; 3 Johns. Ch. R. 481; 11 Mass. Rep. 421; 18 Johns. Rep.

94 ; 9 Cow. Rep. 73 ; 19 Wend. Rep. 414 ; Sugden's Vend.
621 ; 3 Cow. Rep. 188, *et post.*]

3. A fraudulent deed, though it cannot be canceled at law,
may be treated as a nullity on the trial of an ejectment ; especial-
ly in favor of creditors and those claiming in privity with them.
[2 Coke's Rep. 77—83 ; 9 Porter's Rep. 63 ; 1 Ala. Rep. N. S.
102 ; 6 Munf. Rep. 366 ; 10 Johns. Rep. 461 ; 18 Id. 94 ; 12
Wend. Rep. 299 ; 7 Cow. Rep. 301 ; Hardin's Rep. 36 ; 1
Marsh. Rep. 86—114 ; 9 Cow. Rop. 73 ; Roberts on Frauds,
520.] The fact that W. H. McKinney went with his father into
possession, and lived with him, and the remark of the father to
Lea, that he intended the lot as an advancement, cannot support
the son's title as against creditors. [1 A. K. Marsh. Rep. 86.]
It did not give to the son a right, which even a court of equity
would assist in consummating. Wilson McKinney, as against
his son, retained all the rights which his contract with Lea gave,
up to the time when the deed was executed, and if he had died
previous to the latter period, his heirs would have been equally
entitled to the lot. The conveyance to Wm. H. created, by ope-
ration of law, a trust in favor of the father, and he being in pos-
session, became invested with a complete legal title, by virtue of
the statute of uses. [Aik. Dig. 94 ; 7 Mass. Rep. 189 ; 19 Wend.
Rep. 414.]

4. The act of 1836, " For the relief of tenants in possession
against dormant titles," [Aik. Dig. 2d ed. 652,] does not apply to
the present case. That although the third section may, in terms,
authorize a landlord to defend for his tenant, yet an examination
of the entire statute will show its inapplicability.

J. B. CLARK, for the defendants, argued, that the cases of Mc-
gee v. Eastis, [5 Stew. & P. Rep. 426,] Avent v. Read, [2 Por-
ter's Rep. 480,] need not be controverted, that the former, instead
of being opposed to the defendants, is an authority in their favor ;
the latter, as well as Lawson v. Orear, lays down the law
according to the rule which had been previously established in
New York, and are favorable to the plaintiff. Avent v. Read
was decided previous to the act of 1836, " For the relief of tenants
in possession against dormant titles," and is expressly abrogated
by the third section thereof. In Lawson v. Orear, determin-
ed subsequently, no notice is taken of the statute ; hence it is

supposed, that the action in that case was commenced previous to its enactment : but if it was not, the case must yield to the positive terms of the act.

But if the statute was placed out of view, the rule of practice would not inhibit the landlord from making defence. The rule only applies where the plaintiff seeks to recover the tenant's interest in the premises ; but in the present case, a title was asserted inconsistent with that of the landlord, and he should have been allowed to defend against it. [1 Wend. Rep. 316.]

2. It was the interest of Wilson McKinney that the plaintiff's lessor purchased at the plaintiff's sale, and nothing more, and the charge prayed by the plaintiff's counsel was abstract, and properly refused. He stands in the same situation as he would have done had he purchased from Wilson McKinney, and no better. If he had adduced such evidence of title, it could not have availed against one who had a regular chain of legal conveyances ; especially when Wilson McKinney was never invested with a title which a court of law would recognize. [Jackson v. Leggett, 7 Wend. Rep. 377. See also Adams on Eject.; 32 Hardin's Rep. 35.]

Wilson McKinney had no such interest in the premises as the statute of frauds would operate upon; he purchased the lot, not for himself, but for his son, and to the latter Lea was bound to make title; so that neither in point of fact, or in law, can he be said to have made a conveyance to delay, hinder or defeat creditors. [See 1 Story's Eq. § 331–2, and note.] The declaration by the father to Lea, when they made their contract, prevented any trust from resulting in his favor, and his subsequent embarrassment can have no influence upon the equitable title which vested in the son.

The deed from Lea to the son could not be avoided, either by the creditors, or a purchaser at a sheriff's sale, by a proceeding at law, and if it could, then the legal title would re-vest in Lea, and would not be subject to an execution against Wilson McKinney. So that, if the deed be fraudulent, a court of equity alone can declare it so, and administer justice to the parties.

The charge of the Circuit Court is believed to be correct; but if not, the plaintiff cannot avail himself of the error, as he cannot, even if the deed to Wm. H. McKinney is void, recover at law. *In fine,* if the plaintiff would recover the lot, or subject it to what

he advanced for the benefit of creditors by his purchase, he must resort to equity.

COLLIER, C. J.—1. The affidavit on which the motion was made in the circuit court, to associate Wm. H. McKinney as a co-defendant, affirms that he was the landlord of his father; and in the argument here, it has been supposed that such is the relation in which the defendants stood to each other. In considering this point, we will assume such to have been the fact.

A purchaser at a sale under execution acquires all the legal rights of the defendant; [Jackson v. Gridley, 18 Johns. Rep. 98;] and the latter becomes *quasi* his tenant, and will be deemed to continue in that character, until an actual disseisin or disclaimer on his part. [Jackson v. Sternbergh, 1 Johns. Cases 153.]

In Avent v. Read, [2 Porter's Rep. 482,] the court say, "It has been held, that in ejectment by a purchaser, under a sheriff's sale, against the debtor, who refuses to give up possession, the defendant cannot shew title in another; for the plaintiff comes into exactly such estate as the debtor had ; and if it was a tenancy, the plaintiff will be tenant also, and will be estopped in a suit by the landlord from disputing his right, in the same manner as the original tenant, who becomes *quasi* tenant at will to the purchaser." [See also Jackson v. Bush, 10 Johns. Rep. 232 ; Jackson v. McLeod, 12 Johns. Rep. 182.] So, where a motion was made by the landlord, upon affidavit, to be let in to defend in an action of ejectment, the court said, " The lessor claims nothing inconsistent with the rights of the landlord ; the landlord has, therefore, no interest to defend." [Stiles ads. Jackson, 1 Wend. Rep. 103.] It may be well to remark, that in New York there is a statute substantially the same as the twelfth section of the 11 Geo. II, ch. 19. [see 1 vol. R. S. ed. 1829 ;] and in respect to the English statute, it has been holden to extend only to those cases in which the action is inconsistent with the landlord's title. [Adams on Ejectment, 228.] In such cases, the tenant against whom an action of ejectment is brought, is bound to give immediate notice to his landlord, under the penalty of forfeiting three years' rent of the premises.

By the third section of the act " for the relief of tenants in possession, against dormant titles," [Aik. Dig. 2d ed. 652,] it is enacted, " That in any suit for the recovery of lands and tenements,

which shall be commenced against any tenant for years, at will, or sufferance, it shall be lawful for his or her landlord to enter him or herself a defendant to such suit, and such landlord shall be solely entitled to all the benefits and provisions of this act." The terms of this enactment are certainly broad enough, if literally interpreted, to extend to all cases, and it would really seem that no inconvenience would result from allowing it thus to operate. By making himself a defendant, the landlord cannot urge as a defence any matter which the law did not previously recognize as available, to defeat a recovery by the plaintiff. The provision of the act cited, does not affect the parties' rights ; it relates only to the remedy. As then, it was not allowable for the defendant in an execution to defeat the purchaser by showing he held under another, so, neither can the landlord, when let in to defend, set up a title consistent with the possession sought to be recovered. It is immaterial to him whether the plaintiff recovers the possession or not ; for, as soon as he comes in, he will be liable to all the burthens and incur all the responsibilities which rested upon the defendant as a tenant. In fact, the recovery of the purchaser, so far as the landlord is concerned, effects nothing more than the substitution of one tenant for another.

Concede, however, that the circuit court, in admitting the landlord to be made a co-defendant, misapprehended the law, yet from the view taken, it is clear that the error could work prejudice to no one ; and consequently is not fatal to its judgment. But the facts disclosed in the record, instead of showing that Wilson McKinney was the tenant of his son, would (at law) rather warrant the inference that he was his guardian by nature; and his possession might have been referred to his right to occupy in that character. Supposing such to have been the situation of the defendants, the order, admitting the son to defend with the father, is unobjectionable.

2. It is a principle of law founded in good morals, that every one must be just before he is generous ; consequently, a man cannot give property to his children, if he is indebted, to the prejudice of his creditors. The correctness of this rule is admitted, but it is insisted that it has no application to the present case ; that the gift dates back to the time when Wilson McKinney purchased the property in question, and it is not shown that he became indebted until two years thereafter. The first branch of

this proposition is not sustained by the facts in the record. It is not pretended that the son was in fact the donee of the money paid to Lea, but it is insisted, that the declaration made by the father to his vendor, had the effect to invest the son with an equitable title from that time, and that the deed executed in 1840, consummated, in law, a title which became binding in equity, four years previously.

The remark of Wilson McKinney to Lea, imposed no legal obligation upon him, nor invested the son with a right which any tribunal would recognize. It merely showed what were then his intentions in respect to the property, but did not take away the privilege of availing himself of the *locus penitentiae*. At most, it was only a promise for which there was no other consideration than *natural love and affection*, and required something further to be done, to place the lot beyond the control of the father.

In Hickman v. Grimes, [1 Marsh. Rep. 86,] the purchaser from the son filed a bill against the son and father, alleging, that the latter had frequently declared he had given the land to the former, and that he would convey it whenever directed by him to do so. The court said, "It is not alleged that he had executed to his son a covenant or deed, binding himself to convey the land in controversy, and a mere promise to convey, founded upon no other consideration than that of blood or relationship, we apprehend is not sufficient to justify a decree for its specific execution. Where such a consideration is united to the efficacy of a deed, and the contract is executory, its execution may be decreed by a court of equity, as was held by this court in the case of McIntire and Hughes," [4 Bibb.] Again: "Such a consideration would certainly not be sufficient to support an action of *assumpsit*, and it is a general rule, that, if an action at law will not lie upon a contract to recover damages for its breach, a court of equity will not decree its specific execution. Besides, it is inferable from all the cases which have any bearing upon this point, that a contract without being by deed, founded upon such a consideration only, would not be sufficient to create a trust at common law, or a use under the statute of uses." This case is directly in point, and harmonizes with the view which we have taken of the law.

The question must then be considered as if no intention had been expressed at the time of the purchase to make a gift to the son, but rather as a gift made at the time the deed was executed

by Lea, in 1840. This being the proper view of the case, the transaction as against one who became a creditor of Wilson Mc-Kinney previously, cannot be supported.

3. Where one man buys land in the name of another, and pays the consideration money, the land will generally be held by the grantee, in trust for the person, who so pays the money. This rule of law is founded upon the presumption, in the absence of all rebutting circumstances, that he who supplies the money, means the purchase to be for his own benefit, rather than for that of another; and that the conveyance in the name of the latter, is a matter of convenience and arrangement between the parties for other collateral purposes. But as it is, the intent with which the conveyance is permitted to be made to a third person, which guides the use, the presumption of a trust will be rebutted, where the purchase can fairly be deemed to be made for another, from motives of *natural love and affection.* Thus a purchase by a parent, in the name of a son, *prima facie*, is intended, as an advancement, and repels the inference of a resulting trust for the parent. [2 Story's Eq. 443–5.] So if the husband purchase land, and take a deed in the name of his wife, the transaction will be presumed *to be the means of making an advancement to the wife;* but it is open to explanation, and if it be shown that the object of the husband was to defraud creditors, he will be deemed to have a *resulting interest* in the premises which may be sold under execution. [Guthrie v. Gardner, 19 Wend. Rep. 414.]

It has been held, that a resulting trust may be proved by parol, and the estate of the *cestui que trust* sold on execution; in fact, it has been so far considered the property of the *cestui que trust,* as to be a defence in an action of ejectment. [Jackson v. Leggett, 7 Wend. Rep. 377.] So, possession has been considered an interest in lands, within the statute of frauds, as evidence of title, and essential to its completion. [Howard v. Easton, 7 Johns. Rep. 205, '6;] yet it has been held, that a mere naked equity can not be sold under execution. [5 Cow. Rep. 485,] but an equitable interest coupled with the possession is the subject of a levy. [Jackson v. Parker, 9 Cow. Rep. 81.] See also 3 Caine's Rep. 189; 16 Johns. Rep. 192.]

In Jackson v. Scott, [18 Johns. Rep. 93,] the court say, " we have decided that a mere equitable interest cannot be sold on execution; but if connected with the possession of the land, the legal

interest of which the possession is evidence, may be sold. The purchaser acquires all the debtor's legal rights, and possession is a legal right. It becomes a different question, whether a court of equity will enforce an equitable interest, which the debtor had in the land, at the instance of the purchaser—a court of law will not inquire what title the defendant, under such circumstances, has. He is precluded from making the objection that he has no title." [See further, Foote v. Colvin, [3 Johns. Rep. 216.]

The decision, we have cited from the New York Reports, in respect to resulting trusts are doubtless influenced to *some extent*, by the liberal provisions of the statute of uses and trusts which has been enacted in that State. A statute which goes quite beyond the 27th Hen. 8, ch. 10, and 29 Car. 2, ch. 3, and even declares that a disposition of lands made to one person in trust for another, shall not vest either legally or equitably in the trustee. [1 R. S. 727, et post, ed. of 1829.]

It has been argued for the plaintiff, that as the statute of Henry the VIII, incorporated the estates of the trustee and *cestui que trust* into one, whether created by a trust express, or implied, our statute of uses also transferred the *legal*, to the equitable estate, and thereby rendered *both a legal estate*, which might be sold under an execution against the *cestui que trust*. If such is the effect of our statute, which we do not propose to consider, it must be conceded, that in the case before us, Wm. H. as against Wilson McKinney has both the legal and equitable estate; and as against the creditors of his father, it is apprehended, that the deed from Lea confers the legal title. Under this state of things the question is, did the plaintiff acquire by his purchase, such a title as will enable him to recover the possession, in an action at law?

By the act of 1812, " regulating the mode of collecting money by exeeution," [Aik. Dig. 163,] lands are made subject to the payment of judgments or decrees, and the clerks are directed to frame the executions accordingly; " and the sheriff or other offi‐ cer selling any real estate, shall make a title to the purchaser, which title shall vest in the purchaser all the right title and inter‐ est, which the defendant had in and to such real estate, either in law or equity." If this statute was still in force without modifi‐ cation, then it would be no objection to the sale of lands under execution, that the defendant had only an equitable title; but it

Doe, ex dem. Davis v. McKinney and McKinney.

has been repealed in part, by the act of 1820, which provides that " no other than the legal title to land or other real estate, shall hereafter be sold or conveyed by virtue of any execution." [Aik. Dig. 173.] The same statute enacts, that " the equitable title or claim to land, or other real estate, shall hereafter be liable to the payment of debts, by suit in chancery, and not otherwise; and when a bill shall be filed for that purpose, all persons concerned in interest, shall be made parties thereto." [Aikin's Digest 287.]

The act last cited, is explicit in its terms, and does not leave the intention of the legislature to be ascertained by construction. It inhibits the sale of an equitable title under execution, and refers the creditor to chancery for an authority to sell it. The occupant of land, with such a title, we think cannot be regarded as having a distinct, an independent possession which may be levied on, but his possession is so intimately connected with the title that it cannot be sold under an execution so as to transfer an interest to the purchaser.

Even conceding that one in whose favor there is a resulting trust, has both the legal and equitable estate which would enable him to maintain or defend an action of ejectment, and still we think, that Wilson McKinney had no *legal title* to the premises in question, which could be sold under execution. He intended the property as an advancement to his son. This is indicated, not only from their relationship, but by his declarations to Lea; and negatives the presumption that he intended that a trust should result to himself. Yet we have seen that the title of the son cannot be upheld to the prejudice of those who were creditors of the father when the deed was executed, and but for our statute of 1820, already cited, the lot might perhaps be sold under execution against the father; especially if he was in possession. Be this as it may, it is perfectly clear that Wilson McKinney, never acquired the legal title under his purchase; that vested in his son by the conveyance, and there, according to the evidence, it remained at the time of the trial of this cause. The title to real estate in this country, does not pass by livery of seisin merely, but our laws contemplate a written conveyance, and he who possesses this *indicium* of ownership, is usually regarded as the person in whom the legal title is vested. So that even if there was a

resulting trust, technically so called, to Wilson McKinney, we should be inclined to think that it was a mere equitable title, which should be subjected to the payment of a judgment through the medium of a court of equity.

We have heretofore held, that the mere occupation or possession of land which cannot ripen into a legal estate, is not such an interest as can be sold under execution. Examples of such possession are furnished by settlers on public lands, executors, guardians, &c. [Rhea, Conner & Co. v. Hughes, 1 Ala. Rep. 219.] In Smith, et al. v. Hogan, [4 Ala. Rep. 93]—we say, it may well be questioned, whether the *mere possession* of real estate, can be sold under execution, where the defendant has an equitable title to the same: the act of 1820, if it does not expressly, would seem impliedly to inhibit such a proceeding. That statute speaks its own meaning, and it would be profitless to speculate about the objects which prompted its enactment.

To conclude, we are of opinion, that Wilson McKinney had not a *legal estate* in the premises, and although the property may have been subject to the payment of his debts, it could not have been levied on and sold on execution. This being the case, it seems necessarily to follow, that the plaintiff, did not by his purchase, and the deed from the sheriff, acquire any title. It is unnecessary to examine with particularity the refusal to charge the jury as prayed, and the charge given; for whether the one should have been given, and the other withheld, is wholly immaterial to the plaintiff. The defectiveness of his own title was, as we have seen, such as to prevent him from recovering. The consequence is, the judgment of the circuit court is affirmed.