## LAND v. HOPKINS.

1. Not only a perfect, but an inchoate legal title to lands, may be levied on and sold under a *fieri facias*.

2. The defendant in execution was in possession of a lot under a deed executed on the 1st of April, 1837, by J. C. M., as treasurer of the commissioners appointed to sell lots in the town of Livingston, with covenant of warranty; in December, 1838, the defendant in execution bargained and sold the lot, to a third person, to whom he delivered the possession. In June, 1838, the plaintiff obtained his judgment—on the 5th of August, 1839, the lot in question was sold under a *fieri facias* issued thereon, and in October, 1840, a patent was issued by the United States to the commissioners, &c., for the tract of land of which the lot was a part: *Held*—that the judgment operated a lien upon the lot before the sale by the defendant in execution, and that the vendee of the latter might be dispossessed by action at the suit of the purchaser at the sheriff's sale.

Writ of error to the Circuit Court of Sumter.

THIS was an action of trespass at the suit of the defendant in error against the plaintiff, brought as well to try titles to a lot in the town of Livingston, particularly described in the declaration, as to recover damages for its occupancy. The de-

fendant pleaded " not guilty," and issue being joined thereon, the cause was submitted to a jury, who returned a verdict for the plaintiff, and judgment was thereupon rendered.

From a bill of exceptions sealed at the instance of the defendant, it appears that the plaintiff read to the jury the record of a judgment of the Circuit Court of Sumter, rendered on the 5th of October, 1837, and a certificate of its affirmance by the Supreme Court, on the 28th of June, 1838, in favor of Isaac C. Snedicor against Cornelius Rain, Wm. Johnson and Cleaveland Robb. He also gave in evidence several executions issued from the same Circuit Court, one of which tested of 15th April, 1839, was levied by the sheriff on the same day, on the premises in question. In virtue of the *fieri facias* and levy, the premises were duly sold on the 5th of August, 1839, to the plaintiff, to whom the sheriff's deed therefor was delivered on the 14th of the same month. This deed, together with one to J. C. McAlpin, as treasurer of the commissioners, appointed to sell lots in the town of Livingston, bearing date the 1st day of April, 1837, with covenant of warranty, to Robb, also a title bond from Robb to the defendant, dated the 11th of December, 1838—all for the premises in controversy, were read to the jury. The defendant was admitted at the institution of this suit to be in possession of the lots sued for, under the title bond. It was also proved that the title to the premises never passed from the United States, until October, 1840, when it vested in the commissioners.

The Court charged the jury that if they believed the facts set forth to be true, the plaintiff had shown sufficient title to recover in this action.

L. CLARK, with whom was J. HAIR, for the plaintiff in error, insisted that Land had not such a title as was the subject of levy and sale under a *fieri facias*. [5 Porter's Rep. 327, 433, 249; 1 Johns. Ch. Rep. 55-6; 4 Cow. Rep. 601-2; 4 Kent's Com. 98.]

R. H. SMITH, for the defendant, made the following points: 1. That Robb had such a title as was the subject of execution and sale. The land of which the lot in dispute is a part, was reserved from sale by the United States, as a county seat, and

the county had the right of entry. As for McAlpin's deed, his conveyance of lots as treasurer, by a special act passed in 1840-1, were declared valid. Robb had the color of title, and that acquired by the commissioners vested in him, in virtue of this covenant of warranty in McAlpin's deed. This, coupled with the possession, gave him an interest that was subject to execution. [9 Cowen Rep. 192; 4 Ala. Rep. 584.]

2. Land cannot set up the outstanding title to defeat the plaintiff's action. [7 Cow. Rep. 643-4; 3 Id. 89; 2 Caine's Rep. 216; 14 Johns. Rep. 224; 3 Id. 499; 4 Id. 210; 7 Id. 158; 6 Wend. Rep. 228; 12 Id. 57; 9 Cow. Rep. 223; Adams on Eject. 57, note; 3 Peter's Rep. 48, 224; 7 Wend. Rep. 401; 6 Wend. Rep. 666; 12 Id. 105.]

COLLIER, C. J.—In Goodlet v. Smithson, 5 Porter's Rep. 249, we determined, that by the act of entry and payment of the purchase money, the purchasers of lands from the United States acquired an inchoate legal title, which is the subject of levy and sale under execution. And in Rhea, Conner & Co. v. Hughes, 1 Ala. Rep. N. S. 219, we held, that the mere possession and improvement of land belonging to the United States, however valuable, is not the subject of levy under execution. But it was there said, that the question whether the possession under a contract could be reached by *fieri facias*, depended upon a different principle.

The act of 1812, " regulating the mode of collecting money by execution," enacts, that " hereafter, lands, tenements and hereditaments shall be subject to the payment of all judgments or decrees, of any Court of record within this State, and the clerk of such Court shall frame the execution accordingly; and in all cases, the sheriff or other officer levying such execution on real estate, shall give at least thirty days notice of the time of such sale, &c."

In Jackson v. Parker, 9 Cow. Rep. 73, it appears that by a statute of New York, the lands, tenements and real estate of every defendant in a judgment, obtained in a Court of record, is subject to levy and sale; the question was, whether one who was in possession of land under a contract of purchase, had a real estate in the land within the statute, which was bound by a judgment of a Court of record. The Court said the term

estate, is very comprehensive, and signifies the quantity of interest which a person has, from absolute ownership, down to naked possession. *Real estate* includes every possible interest in lands, except a mere chattel interest. *Further*—the possession of lands, is an interest which may be sold on an execution against the possessor—(3 Caine's Rep. 189; 16 Johns. Rep. 192)—and in an action against such possessor he cannot show title in another. The estate which is the subject of a sale on execution must be a legal estate. The Court also cite Jackson v. Scott, 18 Johns. Rep. 94; in which it was decided, that a person in possession of land, under a contract for the purchase and sale of it, has an interest in the land, which may be sold on execution. [See also, Bogart v. Perry, et al. 1 Johns. Ch. Rep. 52, S. C.; 17 Johns. Rep. 351; Jackson v. Town, 4 Cow. Rep. 602; Jackson v. Tuttle, 9 Cow. Rep. 233; Jackson v. Hagaman, 1 Wend. Rep. 502.]

Where one claims as a purchaser, at a sale under execution, it is only necessary to show that there was a legal title subsisting in the defendant at the time the judgment was rendered, without producing a regular chain of title from the United States to the purchaser. [Brock, et al. v. Yongue, et al. 4 Ala. Rep. 584.]

The act of 1820, provides that "no other than the legal title to land or other real estate, shall hereafter be sold or conveyed by virtue of any execution:" *Further*—" The equitable title or claim to land, or other real estate, shall hereafter be liable to the payment of debts by suit in Chancery, and not otherwise, &c." Under this statute it has been held, that the occupant of land with an equitable title, cannot be regarded as having a distinct and independent possession, which may be levied on, but his possession is so intimately connected with the title, that it cannot be sold under execution, so as to transfer an interest to the purchaser. [Doe, ex dem. Davis v. McKinney & McKinney, 5 Ala. Rep. 719.]

Let this view of the law suffice to show the principles applicable to the present case, so far as it is necessary to consider it. Our statute of 1812, is quite as broad in its terms as that of New York, to which we have referred, and but for the limitation prescribed by the act of 1820, would authorize a construction quite as enlarged and liberal. The restriction impos-

ed, applies only where the defendant has a mere equitable title. Here, Robb, a defendant in execution, cannot be regarded as between himself and the plaintiff, as the mere occupant of the government land; nor can his possession be treated by the defendant as an occupancy by permission of the United States. His title, whatever might be its extent, was clearly legal; when it was shown that he was in possession under a deed professing to convey the fee simple title—the plaintiff would not be required to show that the grantor in that deed had an interest to convey, nor will the grantee of Robb be permitted to show that the title was in a third person, for the purpose of defeating the plaintiff's action. It is unimportant whether Robb had a perfect legal title or not; his interest was a *tenement*, or *estate*, either of which might be sold. The act of 1812, is express upon this point, and its meaning thus far, is satisfactorily explained by the case of Jackson v. Parker, ut supra.

The deed of McAlpin could not be treated as merely void—possession passed to the grantee therein, and if not obligatory upon the commissioners, would in virtue of the covenant of warranty therein, draw to him such title as McAlpin would afterwards acquire : and if binding upon the commissioners would have the same effect upon their after acquired title.

A *fieri facias* binds the real estate of the debtor from the rendition of the judgment. [Clay's Dig. 205, § 17; Morris v. Ellis, 3 Ala. Rep. 560.] This being the case, the sale from Robb to the defendant could not have the effect to divest the lien of the execution under which the plaintiff claims.

The purchaser at a sale under execution acquires the title of the defendant at the time of the purchase, unaffected by any assignment made by him subsequent to the judgment. But, whether such purchaser could claim the perfection of his title, in virtue of covenants in the deed, to the defendant in execution, where the vendor of the latter has acquired the outstanding title, is a question, which as it is not necessary to be decided, we purposely decline to consider.

It results from what has been said, that the charge of the Circuit Judge is correct, and the judgment is consequently affirmed.