## WHITESIDE, ET AL. V. THE BRANCH BANK AT DECATUR.

1. Where the declaration in an action of trespass to try titles, alledges that the plaintiff was seized of the premises in question on a certain day and month, it will be presumed that the time of the seizure was previous to the commencement of the suit, though the year is not stated.

2. In an action of trespass to try titles, if the jury return a verdict for too much damages, redress should be sought by an application for a new trial, and the judgment will not be reversed on error, for this cause.

3. P had an equitable title to certain lands, and executed a deed in ordinary form, by which he professed to convey them to L; certain judgments were recovered against L, and he afterwards conveyed these lands to T, (who took possession,) in trust to pay debts, and under executions regularly issued on the judgments, they were sold as the property of L. After the conveyance to L, the vendor of P conveyed the same to the heirs of P, the latter having died: *Held*, that although L's title may not have been complete, yet it was in form legal, as against him or one claiming under him, the judgment operated a lien upon the estate, and a recovery at the suit of the purchaser under the executions, could not be defeated by either of them showing the legal title was in a third person.

Writ of Error to the Circuit Court of Franklin.

THIS was an action of trespass at the suit of the defendant in error, brought as well to try titles to a tract of land, situate in the county of Franklin, as to recover damages for its occupancy. The cause was tried upon the *general issue*, and a verdict returned for the plaintiff, assessing the damages by reason of the defendant's possession since the 13th June, 1842, to 1st January, 1846, to $1750; and as the defendants had planted a crop on the premises, which it "will require until the 1st January, 1847, to gather and secure, for the current year, the jury assess the damages at $500, in addition to the above." A judgment was accordingly rendered, that the plaintiff recover the premises with the damages assessed; that a writ of *habere facias possessionem* and an execution for the damages, the value allowed for the occupancy during the year, be stayed until the 1st January, 1847, &c.

32

A bill of exceptions was sealed at the instance of the defendants below, which presents a case substantially as follows, viz: The plaintiff adduced a judgment in favor of Isaac Lane against John M. Lewis, rendered in the circuit court of Franklin, the 17th April 1838, for $2,276 54, besides costs; a judgment in favor of the plaintiff, rendered by the county court of Morgan, in February, 1839, against John M. Lewis and another, for one thousand and ninety dollars, besides costs; and two others, rendered at the same term, and for the same amount, in favor of the plaintiff against John M. Lewis and others. The plaintiff also produced *pluries* writs of *fieri facias*, issued on these judgments in January, 1842, with the sheriff's indorsement, that they had been levied on the lands in question, and then offered a *venditioni exponas* issued upon the return of the *fi. fa.* which issued upon the judgment first mentioned, tested the 23d May, 1842. It was then proved by the plaintiff, that the lands in controversy were sold under the *fi. fa's* and *vend. ex.* on the 13th June, of the same year, and purchased by the bank, and a deed executed by the sheriff accordingly.

Plaintiff adduced further, a deed made on 12th January, 1839, conveying the premises, by certain persons appointed commissioners, by an order of the orphans' court of Franklin to sell the lands belonging to the estate of Hugh Petit, deceased, to John M. Lewis, who purchased the lands in controversy at that sale. Pettit was in possession of the land from 1833 to 1834, under a "contract of purchase from McLish," and in the latter year he died. Lewis took possession immediately subsequent to his purchase, and continued to occupy the premises up to the spring of 1842, when he left the country. On the 18th September, 1840, Lewis executed a deed conveying the lands in controversy, and other property to the defendant, Tarver, in trust to pay a large amount of indebtedness. Immediately upon Lewis' departure from the State, Tarver took possession under the deed of trust, and has occupied it ever since by his co-defendant Whitesides, as a tenant.

Defendants then proved that the legal title was in McLish, who received a patent for the lands from the United States, in 1836, and conveyed the same to the infant heirs of Pettit

—never having executed a conveyance to the latter in his lifetime.

The court charged the jury, that if they believed the fore-going facts, and that the defendants were in possession of the land, by virtue of the deed of trust by Lewis to Tarver, then the defendants were the tenants of Lewis, and were preclud-ed from showing an outstanding title in another, and they must find for the plaintiff.

J. W. McClung and E. D. Townes. for the plaintiffs in error, made the following points : 1. The declaration is de-fective in not alledging, that the plaintiff had been in pos-session of the premises, and was evicted by the defendant; nor does it show that a trespass was committed previous to December, 1842. If these objections are here available, the first authorizes a reversal of the judgment *in toto*, the latter requires its modification, so that the amount of the damages be reduced. 2. A plaintiff in ejectment must recover up-on the strength of his own title. True, there are exceptions to this rule, but the present case is not one; because the plaintiff's judgment did not operate a lien upon the lands in question, and if it did, the defendant's do not hold, as ten-ants under the defendant in the judgment, who acquired pos-session subsequent to the sale under execution. [9 Wheat. R. 524; 2 Wend. R. 62 ; 3 Caine, 188; 2 Porter's R. 180; 10 Johns. R. 223, 292.]

3. The judgment against Lewis did not operate a lien, be-cause he had nothing more than a *mere equitable title*, which could not be levied on and sold under execution. [Clay's Dig. 205, § 17, 350, § 31.] The legal title is in Pettit's heirs under the deed from McLish, and the commissioner acting under the order of the orphans' court, conveyed such title on-ly as the decedent had at the time of his death, which was nothing more than a mere contract to purchase. The cases in 10 Johns. R. 223, 292, are not applicable, as not only the legal but the equitable title is subject to execution in New York ; nor is Land v. Hopkins, 7 Ala. R. 115, an authority adverse to the plaintiffs in error ; there Robb had an inchoate legal title, which was perfected by the warranty of his ven-dors, so operating as to invest him with the estate which the

patent subsequently issued to the latter evidenced. His vendors at the time of the sale, had an estate under their purchase from the United States, which could be levied on and sold under a *fi. fa.* which passed to Robb, and the title was only made complete by the patent. [See 5 Porter's Rep. 245.]

Pettit had nothing more than an equitable title; the commissioners sold no other title, and Lewis acquired none. This being the case, the plaintiffs in the executions should have gone into equity to have subjected the land in question to their judgments. [5 Ala. Rep. 730.]

L. P. WALKER, R. ARMSTRONG, and J. A. NOOE, for the defendant in error. The objection that in estimating the damages, the jury could not go behind the day of the trespass alledged, is not well taken. If the declaration is defective, (which is denied,) advantage should have been taken on demurrer; and if the damages have been assessed at too large a sum, or upon an improper *data*, the correction should have been sought in the primary court. [3 Stew. R. 444; 1 Por. R. 280; 6 Ib. 460; 6 Ala. R. 269, 750; 4 Por. R. 348; 12 N. H. Rep. 58.] In respect to the questions arising upon the bill of exceptions, they are all answered by Hopkins v. Land, 7 Ala. Rep. 115, which fully sustains the charge to the jury.

COLLIER, C. J.—The objection to the declaration cannot avail. It is alledged that the plaintiff, on the 16th December, was seized in its demesne, as of fee of a certain tract of land, (being that in question,) and on the day and year aforesaid, the defendant, with force and arms broke and entered into the same, and ejected the plaintiff therefrom, detaining the possession, and taking the rents and profits to his own use, &c. The defect is, that the year in which the plaintiff was seized and evicted does not appear. After judgment, if not previously, it must be intended, that the 16th December must refer to that day in a year preceding the commencement of the suit; the uncertainty, if any, cannot be more fatal than a mere blank as to time, and this would not authorize the reversal of a judgment rendered upon a verdict.

In regard to the assessment of the damages, if they are excessive, the defendant should have asked a correction in the circuit court, or if the plaintiff refused to assent to this, he should have moved for a new trial. The authorities cited by the counsel for the defendant in error, upon this point, are so direct that it is not necessary to add any thing more.

In Doe ex dem. Davis v. McKinney and McKinney, 5 Ala. Rep. 719, we held, that the act of 1820, which provides that "no other than the legal title to land, or other real estate, shall hereafter be sold or conveyed by virtue of any execution," and that the equitable title shall be liable to the payment of debts by suit in chancery, and not otherwise, inhibited the sale of a resulting trust under an execution against the goods and chattels, lands, &c. of the *cestui que trust :* and this although the defendant in execution was in the possession of the land. That case it will be observed is one in which the title was purely equitable, and is confessedly within the statute.

In Land v. Hopkins, 7 Ala. Rep. 115, the defendant in execution was in possession of a lot, under a deed executed on the 1st of April, 1837, by J. C. M. as treasurer of the commissioners appointed to sell lots in the town of Livingston, with covenant of warranty ; in December, 1838, the defendant in execution bargained and sold the lot to a third person, to whom he delivered the possession. In June, 1838, the plaintiff obtained his judgment—on the 5th of August, 1839, the lot in question was sold under a *fieri facias* issued thereon, and in October, 1840, a patent was issued by the United States to the commissioners, &c. for the tract of land of which the lot in question was a part : *Held,* that the judgment operated a lien upon the lot before the sale by the defendant in execution, and that the vendee of the latter might be dispossessed by action at the suit of the purchaser at the sheriff's sale. The case does not show it, but the inference is reasonable, that the commissioners had entered the land, or in some other mode acquired from the United States, an imperfect legal title previous to the issuing of the patent ; and it may be, before the sale of the lot, in 1837. Be this as it may, the report does not explicitly affirm such to have been the fact, and we infer from the reasoning of this court, that it

was not a point which influenced its conclusion.   We said,
"The restriction imposed applies only where the defendant has
a mere equitable title.   Here, Robb, a defendant in execution,
cannot be regarded, as between himself and the plaintiff, as
the mere occupant of the government land; nor can his pos-
session be treated by the defendant as an occupancy by per-
mission of the United States.   His title, whatever might be
its extent, was clearly legal; when it was shown that he
was in-possession under a deed professing to convey the fee
simple title—the plaintiff would not be required to show, that
the grantor in the deed had an interest to convey, nor will
the grantee of Robb be permitted to show, that the title was
in a third person, for the purpose of defeating the plaintiff's
action.   It is unimportant whether Robb had a perfect legal
title or not; his interest was a *tenement* or *estate*, either of
which might be sold.   The act of 1812, is express upon this
point, and its meaning, thus far, is satisfactorily explained by
the case of Jackson v. Parker, 9 Cow. Rep. 73."   This rea-
soning is decisive of the case at bar—here it may be said that
the deed of the commissioners appointed to sell the real es-
tate of Pettit, professedly, and in point of form, conveyed the
legal title to Lewis.   This being the case, the judgment of
Lewis, or the purchaser at a sale under execution against
him, is not bound to inquire into the character of Pettit's title
in order to acquire all the right of Lewis; nor shall Lewis,
or one claiming under him, be permitted to defend an action
by a purchaser at the sheriff's sale, by showing that the le-
gal title was in some third person, so as to defeat a recovery.

   The *fieri facias* against Lewis, bound his title by relation,
from the rendition of the judgment—the conveyance by deed
of trust to Tarver, being posterior in point of time must yield
to this lien.   This deed being out of the way, the plaintiff
had a clear right to recover, and the charge to the jury, if not
literally, is substantially correct.   The judgment of the cir-
cuit court is therefore affirmed.