## WILSON *vs.* BEARD.

1. An equitable title to land cannot be sold under execution at law, but resort must be had to a court of equity.

2. When mortgaged lands have been sold under a decree of foreclosure rendered by the Chancery Court, and afterwards redeemed under the statute by the mortgagor, and a conveyance taken in the name of a trustee for the use and benefit of his wife, the mortgagor has not such an interest in the redeemed lands as can be the subject of a levy and sale under execution at law.

ERROR to the Circuit Court of Dallas. Tried before the Hon. E. Pickens.

G. W. GAYLE, for plaintiff in error:

1. The statute of redemption suspended McNair's title for two years after the register's sale, and upon his paying the money and 10 per cent., he fell back on his old title from Calhoun. There are many reasons why this construction should be given to the act.

Unless the act operated a suspension of title, the purchase at register's sale would give an indefeasible title to the purchaser.

If upon McNair's paying the money and per cent. King had refused to make a deed, would McNair have had to file a bill for title? No. To carry out the spirit and intent of the statute, unlawful detainer would have been allowed, to let other creditors redeem from McNair. The statute contemplates no long and tedious action of ejectment, or bill in equity, and McNair could not "reconvey" without possession.—See Clay's Dig. 502, § 3.

The provision of the statute requiring King to reconvey is unconstitutional and void as operating to divest vested rights, unless the act suspends the title. Otherwise the register's deed would give the fee. If suspended, then, no reconveyance is necessary.

The statute might properly be considered as making the debtor the mortgagor, and the purchaser the mortgagee. If so, upon payment of mortgage debt, no reconveyance is necessary.

If the analogy is good, as mortgagor and mortgagee, the money here was paid before the law day passed, and no reconveyance was necessary.

2. This case differs from Elmore v. Harris, 13 Ala. 360, and from Hogan v. Smith, 16 Ala. 600. In these cases bonds for title were outstanding. Here there was none. This distinction is taken in Hopkins v. Stump, 2 Harris & Johnson 301.

3. But the error of the court below is demonstrable by another view. The title was fraudulently put in the wife's trustee and created a resulting trust liable to be sold under execution.—See Guthrie v. Gardner, 19 Wend. 414; Davis v. McKinnie, 5 Ala. 719.

LAPSLEY & HUNTER, *contra :*

The only question in this case is whether the plaintiff acquired any title to the lands in question by his purchase at sheriff's sale. It is clear that he acquired no title, because the defendant in execution had no legal title to the land.—Doe ex dem. Davis v. McKinney, 5 Ala. 719, Elmore & Willis v. Harris, 13 ib. 360; Hogan v. Smith, 16 ib. 600.

The title was in King, the purchaser at the register's sale, and could be transferred only by making a deed as directed by the statute.—Clay's Dig. 502, § 2.

If the deed from King to McClanahan was fraudulent as contended by the plaintiff, it would be void and could be set aside, and this being done, would leave the legal title in King, and of course not subject to sale under execution against McNair.

CHILTON, J.—The defendant was sued in an action of trespass to try title and recover damages, for certain lands described in the declaration. The plaintiff claimed the land under a purchase at sheriff's sale, made by virtue of an execution against one McNair, and proved that McNair had purchased the land from James M. Calhoun, and had executed his notes and a mortgage on the premises to Calhoun, to secure the payment; that Calhoun foreclosed the mortgage by decree in chancery, and the land was sold by the Register in obedience to the decree and purchased by one King; that McNair applied to King to redeem the land under the statute (Clay's Dig. 502) and paid him the redemption money; but requested King to make the title to J. M. McClanahan, the trustee for the wife of McNair, which was done to prevent the land from being liable to certain judgments which had been rendered against McNair, and which he protest-

Wilson v. Beard.

ed he did not intend to pay; that King thereupon executed the conveyance to said McClanahan. Under these circumstances the land was sold, and the Circuit Judge instructed the jury in effect, that notwithstanding the deed from King to McClanahan was made to defraud the creditors of McNair, still it operated to vest the legal title in McClanahan, and left the equitable title only in McNair, which could not be sold under execution at law. This charge, it is insisted by the plaintiff in error, is erroneous, first, because the title of McNair was merely suspended by the operation of the act allowing him to redeem, and that when he paid the money required to make the redemption, he was remitted to his original title derived from Calhoun; secondly, that if such is not the operation of the redemption, still McNair had such title as was subject to sale under execution, namely, a resulting trust in his favor.

It is a proposition too well settled by the decisions of this court now to be controverted, that an equitable title to land cannot be sold under an execution at law, but resort must be had to equity for its sale, after exhausting the legal remedy.—Doe ex dem. Davis v. McKinney, 5 Ala. 719; Elmore & Willis v. Harris, 13 ib. 360; Hogan v. Smith, 16 ib. 600; Clay's Digest, 350, § 31.

Was the interest of McNair legal or equitable? Suppose the deed to McClanahan were held void for fraud, where would the title then be? Most unquestionably in King. This shows that the alleged fraud in making the deed to McClanahan instead of McNair, cannot have the effect of vesting the legal title in the latter. It is wholly unlike the case of a fraudulent conveyance by a debtor of his estate to delay, hinder, or defraud creditors, upon which the statute operates and declares void as to the creditors whose debts are delayed, &c.—Clay's Dig. 254, § 2. Here the legal title is in King, who purchased under the decree of foreclosure, and who, but for the statute authorizing a redemption or re-purchase by McNair, would have taken an indefeasible title. It is too plain, we think, for argument, that after the mortgage has been regularly foreclosed, or a sale decreed by a proper proceeding in a court of equity, and the land is sold and a title executed to the purchaser by the direction of the Chancery Court, or in conformity to the decree, the title, which the parties to the suit had, vests in the purchaser. The mort-

gagor is thrown upon the statute to re-purchase, by paying the amounts thereby prescribed, and upon such payment, is entitled to a re-conveyance. If the party against whom the statute authorizes the redemption, refuses to convey, a court of equity in a proper case will compel him to do so, and thus re-vest the mortgagor with the title. But we have seen no case which holds that the payment of the money operates to vest any title *at law* in the absence of a deed under the circumstances here presented. This is not the case of the mortgagor paying the money due upon the mortgage to the mortgagee, or his assigns, whereby the mortgage becomes defeated and released after satisfaction entered according to the provisions of the statute.—Clay's Dig. 156, § 32. The right of redemption, so far as secured by the mortgage, is taken away and barred by the foreclosure, and can only be asserted under the statute, and we see no more reason for holding that the payment by the original mortgagor shall re-vest the title without any conveyance, than if such payment had been made by any one else entitled to redeem under the statute.

The counsel says this is a resulting trust in favor of McNair. Grant this proposition, still it by no means follows that it confers a legal right upon McNair. On the contrary, the fact that a trust does result from the payment and the execution of the deed to McClanahan, is conclusive to show that the right of McNair is equitable. If the conveyance to McClanahan was made in fraud of the rights of McNair's creditors, a court of equity would most unquestionably imply a trust in favor of McNair, so as to subject it for the payment of his debts. Whether this would be done in favor of McNair himself, the claims of creditors aside, is another question, and one upon which we are not called upon to express an opinion. It is clear, we think, that if the creditors of McNair would subject his interest, they must resort to a court of equity, which alone can enforce the trust for their benefit.

The cases in New York, which militate against this view, arose under statutes very different from ours, (1 Rev. Stat., ed. of 1829, 727,) and cannot therefore be regarded as authorities in point. There is certainly as strong reason for holding a resulting trust beyond the reach of legal process, as an equity conferred by bond for title. The statute makes no distinction between equitable titles, whether by bond or by parol. Whether

the trust is expressly declared in writing or is left to be implied from the nature of the transaction, so long as it confers but an equity, that equity cannot be sold under legal process. The case of Doe ex dem. Davis v. McKinney, *supra*, we think is decisive of this case, and aside from that decision, were the question now for the first time presented, we should feel constrained to hold that McNair had not such interest under the facts presented as could be sold under execution at law.

Judgment affirmed.