SEABURY vs. DOE ex dem. STEWART & EASTON.

22  207
98  132

1. When a party enters into the possession of land under an executory contract of purchase, and fails to comply with the terms of the contract on his part in the payment of the money, the vendor may bring ejectment against him to recover the possession, and he cannot dispute his vendor's title, nor set up an outstanding title to defeat his recovery.

2. In such case, the possession of the vendee is not adverse to his vendor, and the latter may therefore convey the title to another before he has regained the actual possession; and if his alienee is put to a suit for the recovery of the premises, he has the right to take them free from any charge for improvements made by the tenant.

3. When the vendee has entered under an executory contract of purchase, which he fails to comply with in the payment of the purchase money, the vendor may, at his election, either treat him as a tenant, and recover for the use and occupation of the land, or as a trespasser, and eject him by suit; and in neither case is the vendee entitled to notice of his vendor's election, other than that given by the process of the court when legal proceedings are commenced.

4. After the death of the vendor in such case, his executors succeed to his right of election, when the will confers upon them the right to sell the real estate, and the possession of the tenant is subjected to their title; their alienee also is entitled to all their rights against him.

5. When the plaintiff in ejectment shows an outstanding title against that of his lessor, and does not connect himself with it, he may nevertheless recover upon his lessor's title, when the defendant, by claiming under the same lessor, is precluded from setting up an outstanding title.

6. Where plaintiffs and defendant in ejectment claim under the same lessor, a deed from defendant conveying the premises to one of the plaintiffs, in trust for the payment of a debt to a third person, does not operate as an estoppel against plaintiffs' recovery.

7. When plaintiff declares upon a joint demise from three lessors, and, on motion of defendant, the names of two of them are struck out, the latter cannot complain on error that the name of the third lessor was allowed to stand in the

declaration; nor is the action of the court revisable on error, in refusing to strike out the names of the two, unless the defendant would permit the name of the third to stand, as on his sole demise.

8. When defendant in ejectment is precluded from setting up an outstanding title against plaintiff's lessor, the admission of irrelevant testimony on part of plaintiff to rebut an outstanding title is not an error for which the judgment will be reversed.

ERROR to the Circuit Court of Mobile.
Tried before the Hon. JOHN BRAGG.

This was an action of EJECTMENT, brought by the defendants in error against the plaintiff in error, to recover a certain tract of land described in the plaintiffs' declaration. The plaintiffs in their declaration laid five several demises, to-wit: one from Samuel Kitchen, one from Stewart & Easton, one from Joshua Kennedy, one from Hallett and Walker, executors of Joshua Kennedy, and one from William Kitchen, Samuel Kitchen and Susan Kennedy, heirs at law of Samuel Kitchen, deceased. The defendant, Seabury, appeared, entered into the usual consent rule, acknowledged himself in possession of the premises sued for, and pleaded not guilty.

At the trial, and after each of the parties had announced themselves ready, the defendant's counsel moved the court, on behalf of Wm. Kitchen and Samuel Kitchen, on their affidavits produced, to strike their names from the declaration, on the ground that they had been used without their authority or consent. This motion was granted by the court, and their names stricken out.

The plaintiffs also moved for a *nolle prosequi* as to the demises of Joshua Kennedy and Samuel Kitchen, it appearing that they had died before suit was brought, and the said demises were, by leave of the court, stricken out. The trial then proceeded, and resulted in a verdict for the plaintiffs.

On the trial, a bill of exceptions was allowed, by which it appears that the plaintiffs, in order to sustain their case, offered in evidence a deed, with covenants of warranty, from Hallett & Walker, executors of Joshua Kennedy, to the defendants in error, dated the 21st day of June, 1847, and conveying to them the premises in question; also, the will of Joshua Kennedy, empowering his executors to sell his real estate, and proved that the said executors, Hallett & Walker, were

qualified and acted as executors under the will. They also proved and offered a paper signed by Joshua Kennedy, and purporting to be the agreement made with the defendant, Seabury, and proved that the defendant went into the possession of the said premises under that agreement, and had been in possession ever since. That agreement is as follows: " I have sold to James S. Seabury, of the county of Baldwin in the State of Alabama, the tract of land of four hundred arpens, or thereabouts, on Chickasaboque creek, in the county of Mobile, formerly in the possession of Joseph Kennedy, Esq., deceased, and on which Saml. A. Carpenter has lately erected a saw mill; and the said Seabury agrees to pay me the sum of three thousand dollars, in three annual instalments from the date of this memorandum; and the said Seabury is hereby authorized to take possession of said premises forthwith, and to make such improvements thereon as he may think proper ; and I hereby bind myself, my heirs, executors and administrators, to make out for the said Seabury, as soon as I conveniently can, a lease of the premises above mentioned for the term of three years from this date ; and in case the said Seabury shall well and truly pay to me the three yearly instalments of one thousand dollars each, as above mentioned, I hereby bind myself, my heirs, executors and administrators, to make out and deliver to said Seabury a good and sufficient warranty deed for the said tract of land and saw mill, as above mentioned. Dated at Mobile, this 6th day of November, A. D. 1835. (Signed) JOSHUA KENNEDY."

The plaintiffs further offered a patent from the United States to Samuel Kitchen for the same land, dated the 27th of January, 1841; also the petition and schedule of the said Seabury for the benefit of the United States Bankrupt Law, dated the 12th day of December, 1842; and in the said schedule appeared this same piece of land, and also that there was then due and owing upon it, under the agreement by which he took possession of it, the sum of $3,600. It also appeared by the same schedule, that Seabury had mortgaged the same property, with other property, to Joseph Wiswall, to secure a large debt then due and owing to the said Wiswall. They also offered the judgment of discharge of the said Seabury as a bankrupt, in the United States District Court at Mobile, dated the 2d day of May, 1843.

The plaintiffs also offered evidence tending to show, that Joseph P. Kennedy was in possession of the premises from 1819 to 1822, and had a mill there, and that it was then held as the property of Joshua Kennedy; that in 1833 one Saml. A. Carpenter went into possession of the premises, under an agreement with Kennedy, and re-built the mill on joint account with Kennedy; that after occupying the premises some time, he and Kennedy disagreed, and he abandoned the place and left it in the possession of the said Kennedy; that by their agreement, Kennedy was to make him a deed for part of the property, and it was upon this subject that they disagreed; that in 1834, and whilst this contention existed between him (Carpenter, the witness,) and said Kennedy, he learned that Samuel Kitchen had some claim, or pretended to have some claim to the said land; that on hearing these facts, he went to said Kitchen to inquire about it; "that said Kitchen told him he did not claim it, that he recognized the right of Kennedy, that it belonged to him, (Kennedy,) and that he was ready to make him a deed to it at any time." Witness was willing to take Kennedy's deed, but Kennedy would not give it, and he abandoned the premises.

The defendant objected to the declarations of Saml. Kitchen, as detailed by the witness, Carpenter, going to the jury as evidence. His objection was overruled by the court, and the defendant excepted.

The defendant then offered in evidence a transcript from the records of the Orphans' Court of Mobile county, showing the resignation of Robert L. Walker as executor of Joshua Kennedy, which was duly filed and accepted in March, 1848. Defendant further offered a deed from said defendant, Seabury, to Wm. C. Easton, in trust to secure a debt due to Joseph Wiswall of upwards of $9000, embracing the premises sued for, and dated the 5th day of May, 1838, with warranty of title; also, a deed of release from said Wiswall to said Seabury, of all of said debt mentioned in said deed of trust. This last deed bears date July 1st, 1850; also, a deed of release and quit claim of the same premises from Wm. Kitchen to Saml. L. Kitchen, dated the 15th of April, 1851; also, a deed, with warranty, from Samuel Kitchen to Joseph Wiswall of the same premises, dated the 21st of April, 1851;

also, a lease from said Wiswall to said defendant, Seabury, of the same premises; but the lease is not appended to the bill of exceptions, and it does not appear when it was dated, for what term or for what consideration it was made.

There was also evidence tending to show an indebtedness on the part of the plaintiffs to defendant, and also on the part of defendant to plaintiffs. There was also proof tending to show, that Seabury, at a date prior to the date of the deed from Hallett & Walker, executors, to Stewart & Easton, abandoned his contract of purchase with Joshua Kennedy, and on one occasion said, "he would have nothing more to do with it, and that he would discharge his mind from the subject."

The bill of exceptions contains much other proof, but it is not deemed essential that it should be more fully stated in order fairly to present the questions of law that arise.

After the evidence was closed, the plaintiffs contended that they were entitled to the demise of Susan Kennedy laid in the declaration, as it then stood, as the defendant had, by his own motion, caused to be stricken out the names of Wm. Kitchen and Samuel L. Kitchen, who were stated in said declaration, as it originally stood, to have demised jointly with the said Susan; but the defendant contended, that as the demise was joint, and two of the names being stricken out, the other name must be considered as out also. The court decided, that the name of Susan Kennedy should remain in the declaration, and imposed upon the defendant the condition, that the names of the said Kitchens should not be stricken out, unless he would permit the name of the said Susan Kennedy to stand in said declaration as a sole demise. To this the defendant excepted.

The court charged the jury: "That if Seabury went into possession of the premises sued for under a contract of purchase from Kennedy, he thereby admitted the title of Kennedy; that if Seabury had failed to make payment of the price of purchase of the land, Kennedy in his lifetime could have sued him in ejectment, and Seabury could not dispute Kennedy's title, or set up any outstanding title against it; that Stewart & Easton, by purchasing from Kennedy's executors, would be entitled to stand in the shoes of Kennedy, and that then Seabury could not dispute the title of Stewart & Easton, or

set up or claim under any other outstanding title against them; nor could it avail the defendant, that Stewart & Easton had themselves set up and shown that the patent and legal title was in Kitchen and his heirs; that if the defendant claimed under a contract of purchase from Kennedy, and Stewart & Easton also held from Kennedy, the defendant could not hold adversely to Stewart & Easton, and was not entitled to set off against them the improvements he had made." To this charge the defendant excepted, and prayed the court to charge:

"1. That the failure of Seabury to pay the instalments named in the agreement of Kennedy, did not rescind the contract; they were bound to give notice to Seabury to that effect. (Which charge, as prayed, the court refused.) The court admitted the proposition, but qualified it by charging the jury, that it did not rescind the contract; but such failure would enable Kennedy to recover in ejectment.

"2. That the conveyance from Hallett & Walker, executors, to Stewart & Easton, of the 21st of June, 1847, was a violation of the agreement of Kennedy with Seabury, and absolved the latter from all allegiance and obligation to them under said contract, and made his possession adverse to them. This charge was refused.

"3. That Stewart & Easton, claiming under Kennedy, and having themselves set up and proved an outstanding title in Kitchen's heirs, and not connecting themselves by a conveyance with the title of Kitchen, are precluded from recovering on the title of Kennedy. This charge was refused; and the court charged, that if Stewart & Easton and Seabury both claimed under Kennedy, they (S. & E.) could recover on the title of Kennedy, notwithstanding they had shown the patent of Samuel Kitchen and his heirs.

"4. That Stewart & Easton are estopped from recovering against Seabury, on their own demise, by the deed of trust made to Wm. C. Easton in 1838, and the recitals therein above set forth. This charge was refused.

"5. That as the plaintiffs now rested their right to recover upon two demises only, to-wit: one from Stewart & Easton and one from Susan Kennedy, which were not connected by any conveyance, if the jury found for the plaintiffs, their verdict must show on which demise they found." This charge

was also refused; and the court charged the jury: "That if they found a part only of the property, it would be on the demise of Susan Kennedy; but if they found the whole for the plaintiffs, they might, if they pleased, find a verdict for the plaintiffs generally, without specifying on which count they found;" and to all these refusals to charge, the defendant excepted."

The errors assigned are, the admission of the testimony excepted to; the charge of the court as given; the refusals of the court to charge as prayed, with other matters of exception appearing in the bill of exceptions.

P. PHILLIPS, for plaintiff in error:

Joint demise of three became inoperative by striking out the names of two.

If the demise was permitted to stand in the name of one, then the recovery was confined to the share of that one; and there being another demise upon which the whole was recoverable, the verdict should have been, as requested by defendant, applied to the specific count upon which it was found. McArthur v. Porter, 6 Pet. 213; Van Ness v. Bank of United States, 13 ib. 21.

Easton had assumed the trust created by the deed of Seabury, and was estopped from asserting a subsequently acquired title in his own favor.

The plaintiffs themselves produced in evidence a patent from the United States to Kitchen. By this they showed a "superior outstanding title, which would defeat their recovery."

The non-payment of the purchase money, under the circumstances, did not rescind the contract of purchase; and before Kennedy could convey the title, it was necessary that he should have given notice to Seabury. Peters v. Allison, 1 B. Monroe 232; Bradford v. Thomas, 6 ib. 332; Venable v. McDonald, 4 Dana 336; Tiernan v. Johnson, 7 Mis. 43; Teary v. Merritt, 4 Eng. 559; Petty v. Doe, 13 A. R. 569.

GEO. N STEWART, contra:

1. There was a demise by the three heirs at law of Samuel Kitchen, viz: William, Samuel and Susan; to the declara-

tion the defendant had pleaded, and issue was joined. The defendant's counsel moved to strike out the names of William and Samuel Kitchen, only after ·the parties had announced themselves ready for trial. This was a surprise on the plaintiff, who had gone to trial on the issue as joined. But the court ordered these two names to be struck out, leaving, of course, the demise effectual as to Susan Kennedy. The defendant afterwards pretended that the whole count was struck out; but the bill of exceptions shows expressly that this was not true, and the court did not agree that it was true, and did not so understand it, and ordered the entry to be made according to what the court had agreed to do, and refused to allow of the pretence set up by defendant's counsel contrary to the truth, and caused the truth to be recorded. The bill shows that the judge never did grant the motion, as pretended by defendant; and that, indeed, the defendant never did ask to strike out the whole count. The whole of this is a mere quibble, and certainly it cannot be supposed the court would reverse the judgment, because the counsel asserts a thing which the judge and the record denies; no question of merits is involved in this.

2. That improper proof was admitted. This was that part of the evidence of Carpenter, wherein he recognized the legality of the possession of Joshua Kennedy, and admitted his right to sell it. In this there certainly can be no error. Joshua Kennedy was in possession, claiming the right to sell the land and to dispose of it, and he sold it to Seabury. It is now sought to set up a title in Kitchen, as adverse and hostile to that of Kennedy, and that Kennedy was assuming a right he had not. The admission of Kitchen, he being since dead, that he did not pretend to any claim, and that Kennedy's claim and possession was not against his will, was certainly proper evidence to show the nature of the claim and possession which Kennedy had, and also to repel the pretension that it was a trespass on the rights of Kitchen. In this there was no error. Littell's Sel. Cases 444.

3. The objection to the charges given by the court. In this there is no error. Hamilton v. Taylor, Littell's Selected Cases 444; Baker v. Gittings, 16 Ohio 485; Jackson v. Camp, 1 Cowen 605; Wright v. Moore, 21 Wendell 230; Jackson

ex dem. Shipley v. Moncrief, 5 Wend. 26; Whiteside v. Jackson, 1 Wend. 418. It is said that there should have been a demand of possession of Seabury, before he could be ousted; but this position is untenable. It must be particularly noticed, that it is not pretended that this requirement is based on any idea of tenancy by Seabury. The plaintiffs in error do not claim this; all their instructions are based upon the idea of this being a right of Seabury attaching to him as a purchaser in possession. They have chosen their position as such, and repudiate the idea of tenancy, and the court will notice that the whole bill of exceptions is by them relied on as a purchaser; they make that point only, and not one of tenancy. The agreement did provide that Kennedy should make a lease to Seabury for three years, but this lease never was made, and it never was required nor demanded by Seabury. He entered as a purchaser, and so claims to place himself. No question of tenancy in such case can be considered. See the case of Abeel v. Radcliff, 13 Johns. 299; also, 1 Wend. 421. The position of one in possession under an agreement to purchase, and who fails to comply, is that of a trespasser, and no demand or notice to quit is necessary. 1 Cowen R. 605; 6 Johns. Rep. 46; 21 Wend. 233; 7 Cowen 751. The court further charged that Seabury could not claim as an adverse possessor. His position was one of subordination to the title of his vendor, from whom he received the possession in confidence, and could not contest it. 4 Johns. 230; 6 ib. 34; Adams on Ejectment 57, and note, 31, 28 note 30. He could neither prevent the vendor from conveying to another, (Cawsey v. Driver, 13 Ala. 818,) nor controvert the title of Stewart & Easton to whom he conveyed; because he was bound by the title, and as he was not an adverse possessor, he could set up no claim for improvements under the statute. There was no proof of any improvements made since 1836, the date of the statute, nor any proof of any claim within the terms of the statute of improvements. But to be entitled to claim for improvements, the possession must be adverse; his was not. The outstanding title of Kitchen could not be set up, because Seabury had received the possession from Kennedy. As purchaser holding over after failure to comply, the law would be the same as in case of a tenan-

cy; it is not adverse. It would make no difference who gave in evidence the patent to Kitchen; the fact would have the same effect, no matter who exhibited the patent; but it was produced at the request of the defendant, who gave to plaintiff a notice requiring it to be produced on the trial, and it was produced accordingly. The notice to produce the patent is not found in the bill of exceptions, although it is referred to, and was intended to be set out. It was lost and could not be found. It was inserted at the request of the plaintiff below; but it is of no consequence, as the whole matter is immaterial.

4. As to the charges which the defendant requested the court to give: The first and second instructions involved the same questions considered above. Before Seabury could claim to be protected by his agreement of purchase, it would be necessary for him to show that he had complied with it. So far from the law being as he contended, even if he had shown full payment but no conveyance, he could be ousted by ejectment, (Coleman v. Casey, 1 A. K. Marshall's Rep. 440,) either by Kennedy, by his executors, or by Stewart & Easton; for, as between all these parties they had the title, and Seabury only an agreement or obligation, (without even a seal,) that a deed would be made to him. The deed would convey the title at law, and his redress would be either for damages, or in equity for a specific agreement. Neither remedy could he, however, maintain without compliance on his part. In any event, Seabury had no claim; he had parted with all interest whatever, by deed and by bankruptcy. It will be remembered that Seabury had conveyed all his title, if any he had, to Easton, by the deed of trust; besides, he had made a surrender in bankruptcy and assignment to the assignee in bankruptcy, and yet he is talking of notice to him to rescind the contract. Where one obtains the possession of another, he cannot in any way set himself up as an adverse possessor, either during the continuance of the term, nor at any time afterwards. Shelton v. Doe ex dem. Easton, 6 Ala. 230; 5 Cowen 129–30. The fourth instruction asked was, that the deed to Easton, as trustee, estopped Stewart & Easton from recovering against Seabury. It is difficult to conceive how Seabury could claim any protection by that deed; by

that very deed Easton could have ousted him, Seabury, for the condition was forfeited. But that deed was a nullity, because Seabury had no title to convey, as against Kennedy; if full payment had been made, it would have been good against Seabury; but even then, not good against Kennedy at law. But neither Seabury nor Wiswall furnished to Easton means to pay for the land, and that title was subject to the superior right and title of Kennedy; so, in Easton, the title of Kennedy could not merge in that of Seabury; but, on the contrary, that of Seabury was merged in that of Kennedy. Easton, therefore, held title, not under the deed from Seabury, but under that from Hallett to Stewart & Easton, which was paramount.

5. It is very clear, that the jury may find a general verdict always when they think proper, and they cannot be required to find on any count specially. There is, therefore, no error in the case shown in any respect.

GIBBONS, J.—The charge of the court below as given to the jury, in our opinion, under the proof, contains no error. It is predicated upon principles of law, now too well established to be questioned, or to require affirmative argument. The charge asserts simply, that where a party under an executory agreement of purchase enters into the possession of lands, and fails to comply with the terms of his contract in the payment of the purchase money, the vendor has the right to bring ejectment against him and recover back his lands. The charge further asserts, that in such a case, the vendee cannot dispute the title of the vendor, nor set up an outstanding title to defeat his recovery; that the possession of the vendee is not adverse to the vendor, in the legal sense of that term, but consistent with his title, and therefore the vendor has the right, even before he regains the actual *pedis possessio* of the land, to pass the title to a third party by deed; and if he is put to a suit for the recovery of the premises, he has the right to take them free of any charge for improvements, which may have been made while in the possession of such vendee. All of these propositions we think correct as applied to the proof, and the court was warranted in announcing them to the jury. Hamilton v. Taylor, Lit. Sel. Cases 444;

Baker v. Gittings, 16 Ohio 485; Wright v. Moore, 21 Wend. 230; Whiteside v. Jackson, 1 ib. 418; 4 John. 230; 6 ib. 34.

The vendor of premises, under circumstances such as are disclosed by the record, after such default in payment of the purchase money, has the right, at his election, to treat the vendee as his tenant, and recover against him for the use and occupation of the land, (Davidson v. Ernest, 7 Ala. 817;) or he may treat him as a trespasser and eject him by suit. Jackson v. Camp, 1 Cowen 605; 7 ib. 751.

The first charge asked by the defendant was, in our opinion, correctly refused. This was, that the default of Seabury in the non-payment of the purchase money, did not rescind the contract between him and Kennedy or his grantees, but that in order to effect this, it was necessary to have given Seabury notice. In no view that we can take of this case under the proof, can we see how Seabury was entitled to notice. He had violated his agreement in the non-payment of the purchase money stipulated, and his duty was, after such default, to pay the money, or restore the property to his vendor if he would receive it. The vendee being in default, the vendor has the right to elect whether he will abandon the contract and re-enter upon his premises, or hold the vendee to his agreement, if the contract is such a one as can be enforced by compelling a specific performance; but in neither case has he the right to any notice of the election of the vendor, other than what the process would give him when proceedings are commenced. There was no error in refusing to give the charge as asked; and, without affirming the correctness of the charge as modified and given by the court, we simply say, there is nothing in it of which the defendant can complain.

The second charge asked, we think, was also properly refused. It assumes that Kennedy, notwithstanding the default of Seabury, and after such default had continued for nine years, had no right to part with his title, after having put Seabury in possession of the land under his agreement. It assumes, that one party to an agreement, in which there are mutual stipulations, can wholly neglect those that rest upon him, and yet hold the other party to the faithful observance

of his. It assumes also, that where a landlord conveys by deed the freehold to another, the tenant is absolved from all allegiance to the grantee. To none of these propositions can we assent.

Kennedy, or Kennedy's executors, after the default of Seabury, had the right to consider him their tenant, or as a trespasser. His possession was subjected to their title, and was, in law, their possession. If they conveyed the title to a third party, that third party stood in their shoes. This charge was correctly refused, and we see no error in that which was substituted for it by the court, as the latter was but an affirmation of what had been previously given in charge to the jury.

The theory of the third charge asked is correct, as applied to the generality of cases; but owing to the peculiar position of the defendant, it was not applicable to him, and was correctly refused. The mere fact that the plaintiff himself shows, in the course of his proof, an outstanding title, cannot vary the case from what it would be if the defendant on his part showed or offered to show the same fact. His position does not permit him to take advantage of it, come from what source it may.

The fourth charge asked was, we think, also properly refused. It is difficult to comprehend how the fact, that Wm. C. Easton had been the trustee in a deed made by Seabury for the benefit of Wiswall, of these same premises, could operate as an estoppel to Stewart & Easton, so as to prevent them from recovering the property on a title acquired from Kennedy. The deed from Seabury to Easton, trustee, conveyed to Easton such title, and only such title, as Seabury had. If he had any title to pass by the deed, so far from operating as an estoppel to Easton, it would have the opposite effect.

The fifth charge asked, we think, was correctly refused also; because, under the proof before the jury, and the charges of the court previously given, it was not demanded in order to secure the rights of the defendant. The charge, however, as given by the court after such refusal, was all that the defendant would have been entitled to, if the state of the evidence had created a demand for it, in order to prevent an injury from being inflicted upon him by the verdict.

The next matter of exception presented by the record is, that on the trial the name of Susan Kennedy was permitted to remain in the declaration, purporting a sole demise, after the names of William Kitchen and Samuel L. Kitchen had been stricken out. The record shows that the names of the latter were stricken out on the motion of the defendant, and it would be nothing less than the most manifest error that would induce this court to sustain an exception where the matter complained of was brought about by the party himself assigning the error. But we see no reason why the name of Susan Kennedy could not as well stand alone in the declaration, as when joined with the other heirs of Samuel Kitchen, deceased. Adams on Ejectment 210. If there was a recovery upon it, such recovery could only have been for such interest as she had. But there was no error in laying a demise in her name alone. This decision of the court below, however, was a matter within its discretion, and not revisable on error.

The only remaining matter of exception is, that illegal evidence was permitted to go to the jury. This consisted of the declarations of Samuel Kitchen. In the view that we have taken of this case, this evidence becomes entirely irrelevant; and whether the court erred or not in permitting it to go to the jury, we do not now think it necessary to decide. The plaintiffs, in offering it, were doing what the law did not require of them. Their case was made out without it. It was offered to rebut an outstanding title, when such a defence was not in the power of the defendant to make; and if the court below even had committed an error, we should not have reversed the case for that reason. It would have been an error in no way affecting the rights of the defendant, and he could not be heard in complaint of it.

We find no error in the record, and the judgment of the court below is affirmed.