## YOU vs. FLINN.

### [REAL ACTION IN NATURE OF EJECTMENT.]

1. *Statute of uses and trusts construed.*—Section 1306 of the Code converts all titles and interests in lands into legal estates in the beneficiary, to the same extent as if the conveyance had been made directly to him, where the nominal title is vested in a naked trustee, who is not placed in possession, nor required to perform any duties, and where the instrument creating such nominal title declares a use, trust, or confidence for another; but it has no application to a conveyance, which, although it may declare a trust for the use of the grantor or of another person, charges the trustee with the control, management, or other active duties in regard to the trust property ; nor does it apply to a conveyance of land, taken by a father in the name of his son, which recites that the purchase-money was paid by the father.

2. *When purchaser at sheriff's sale may maintain real action.*—A purchaser of land at sheriff's sale does not obtain such a title as will support a real action in the nature of an ejectment, when it appears that the defendant in execution, although he had himself paid the purchase-money, took the conveyance in the name of his son.

27

Appeal from the Circuit Court of Dale.
Tried before the Hon. Robt. Dougherty.

This action was brought by Benjamin You, against James Flinn, to recover the possession of certain lots in the town of Newton in said county, together with damages for their detention; and was commenced on the 15th February, 1858. The plaintiff claimed the lots under a purchase at sheriff's sale against James J. Flinn, who was the father of the defendant. On the trial, the plaintiff offered in evidence the judgment under which the land was sold, and the sheriff's deed to himself as the highest bidder; and proved, that the action in which said judgment was rendered was commenced by attachment, which was levied on the 1st July, 1856; and that the sheriff's sale, at which he became purchaser, was made on the 1st Monday in June, 1857. "The plaintiff then offered in evidence a deed for the land in controversy from one A. J. Biggers to the defendant, which was dated the 5th February, 1856, and which recited that the purchase-money for said land was paid by said James J. Flinn, the father of said defendant; and proved by said Bigger that said purchase-money was in fact paid by said James J. Flinn, and that the deed was made to the defendant by the direction and request of said James J.; also, that said James J. was greatly embarrassed with debt at the time of the execution of said deed; that both he and his son, the defendant, resided on the land during a part of the year 1856; and that said James J., during that year, left the country for parts unknown. This being all the evidence in the case, the court charged the jury, that if they believed the evidence, they must find for the defendant." In consequence of this charge, to which the plaintiff excepted, he was compelled to take a nonsuit; which he now moves to set aside, and assigns as error the charge of the court.

Pugh & Bullock, for the appellant.
L. L. Cato, *contra*.

STONE, J.—A construction of the following sections of the Code seems necessary to a proper decision of this case :

" § 1306. No use, trust or confidence, can be declared of any land, or of any charge upon the same, for the mere benefit of third persons ; and all assurances, declaring any such use, trust or confidence, must be held and taken to vest the legal estate in the person or persons for whom the same is declared, and no estate or interest can vest thereby in any trustee.

" § 1307. Nothing in the preceding section contained shall prevent the conveyance of real or personal property, or the issues, rents and profits thereof, to another, in trust for the use of the grantor, or of a third person, or his family, or for any other lawful purpose ; but in such case, the legal title vests in the trustee."

Conveyances coming within the influence of section 1306, vest the legal title in the beneficiary, while the trustee takes no interest or title whatever. In cases governed by section 1307, the trustee takes the legal title, while the beneficiary has but an equity. It is manifest, then, that the two sections must each have an independent and separate field of operation.

While we must confess that the dividing line between the two sections is not so clearly defined as could be desired, we, nevertheless, think that the varying phraseology affords a sufficient guide to a proper and satisfactory solution. It will be observed, that section 1306 provides for an use, trust or confidence, for the *mere* benefit of third persons; while section 1307 contemplates conveyances *in trust for the use* of the grantor, &c. We suppose the two sections were derived from the Revised Statutes of New York, which contain provisions of kindred import, but not in the same language. The legislation of each State was doubtless conceived in the commendable design of simplifying conveyances, titles, &c., and of disrobing them, to a considerable extent, of the machinery of uses and trusts, too often resorted to as a cover for fraud, and grievously detrimental to that free commerce in property which is a cardinal principle in our policy.

The legislation of New York, which, it is supposed, suggested the incorporation into our Code of the sections above copied, is found in part 2, ch. 1, title 2, article 2, of their Revised Statutes, commencing on page 727. Its first section provides, that " uses and trusts, except as authorized and modified in this article, are abolished; and every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided in this chapter."—§ 45.

Section 47 declares, that every person who shall be entitled to the actual possession of lands, and the receipt of the rents and profits, shall be deemed to have a legal estate therein.

Section 48 provides, that section 47 shall not divest the estate of any trustee in any existing trust, whose title is not merely nominal, but is connected with some power of disposition or management of the lands.

Section 49 requires conveyances to be made directly to the person who is to enjoy the possession and profits, and abolishes mere naked trusts.

Section 50 declares, that section 49 shall not destroy trusts arising or resulting by implication of law, or such express trusts as are afterwards provided for.

Sections 51, 52 and 53 abolish, as between trustee and beneficiary, all trusts which shall result by operation of law from the payment of the purchase-money by one, where the title is made to another; declare such conveyances fraudulent and void, as against the creditors of the person by whom the purchase-money is paid; but the trust is not inoperative *inter partes*, if the conveyance is procured to be made to the trustee, without the consent or knowledge of the person paying the consideration.

" § 55. Express trusts may be created for any or either of the following purposes :

" 1. To sell lands for the benefit of creditors ;

" 2. To sell, mortgage, or lease lands, for the benefit of legatees, or for the purpose of satisfying any charge thereon ;

" 3. To secure the rents and profits of lands, and apply them to the education and support, or either, of any per-

son, during the life of such person, or for any shorter time, subject to the rules prescribed in the first article of this title;

"4. To receive the rents and profits of lands, and to accumulate the same, for the purposes, and within the limits prescribed in the first article of this title."

The New York statutes, a synopsis of which is given above, have been very thoroughly and ably considered in that State. In the great case of Coster v. Lorillard, 14 Wend. 265–399, they underwent a very full consideration in the New York court for the correction of errors. Opinions were delivered, *seriatim*, by Chief-Justice Savage, Justice Nelson, and three of the senators. There was no substantial difference expressed, on the general effect of their statutes. All seemed to agree in the construction of sections 45, 46, 47, 49, the substance of which sections is given above. All seemed to agree that, under their statutes, uses and trusts were converted into legal estates, except to the extent of the reservations therein contained. Their chief divisions of opinion were upon the construction of section 55, subdivision 3. As the peculiar terms of that provision are not found in our statutes, we need not notice their discussion further.

In the late case of Gott v. Cook, 7 Paige, 521, Chancellor Walworth also considered their legislation on this subject, and particularly subdivision 3 of section 55.

Chancellor Kent has also sketched, in clear and comperhensive language, an exposition of their statutes now under discussion.—See 4 Kent's Com. (8th ed.) pp. 323, *et seq.* (m. p.) 308.

The substance of all that has been there written is, that their statutes have abolished all dry or useless express trusts; that implied trusts are preserved, only to the extent necessary to prevent fraud ; and that express trusts are permitted, in cases where the positive services of a trustee are required to carry out the active duties enumerated in their statutes.

A comparison of our statutes with those of New York will satisfy any one, that the object aimed at by our legislature is, in the main, the same as that which had been

achieved by theirs; namely, the conversion of dry or naked trusts and uses into legal statutes. Our statutes are not as comprehensive as theirs. There seems to be no provision in ours corresponding with section 51 of theirs. We think, however, that the effect of our section 1306 is to accomplish the chief results of their sections 45, 47 and 49; while our section 1307 was intended to subserve all the beneficial purposes of their sections 48 and 55. The effect of our section 1320 is to continue trusts which result by implication or construction of law, and those which may be transferred or extinguished by operation of law.

Without further pointing out the particulars in which our statutes are less comprehensive than those of New York, we do not hesitate to declare, that section 1306 of the Code converts into legal estates in the beneficiary all titles and interests in lands, where the nominal title is vested in a naked or dry trustee—one who is not placed in possession, and who is required to perform no duties— and where the instrument creating such nominal title *declares* a use, trust or confidence for another, to the same extent as if the deed or conveyance had been made directly to the beneficiary. On the other hand, it has no application to conveyances of either real or personal property, although the conveyance may declare that it is in trust for the use of the grantor or another; provided the trustee is charged with the control, management, or other active duties in regard to the trust fund. This latter class falls under section 1307 of the Code.

The deed of Mr. Biggers, given in evidence, was made to James Flinn, the defendant in this suit. It does not, so far as we are informed, *declare* any use, trust or confidence for another. True, it expresses that the purchase-money was paid by James J. Flinn; and this testimony, if uncontroverted, is enough to establish a resulting trust in favor of James J., by whom the money purports to have been paid.—See 2 Story's Eq. §§ 1201–2; Hatton v. Landman, 28 Ala. 127; Deg v. Deg, 2 Pr. Williams, 412, 414; Ryall v. Ryall, 1 Atk. 59; Young v. Peachy, 2 Atk. 254. This presumption, however, might in some

cases be rebutted; and it might be shown that the money was really the property of James Flinn, or, under some lawful arrangement, the title was rightly taken in the name of the father.—See Hatton v. Landman, *supra;* also, Smith's Ex'r v. Garth, 32 Ala. We do not think this case comes within section 1306 of the Code.

[2.] It is contended, however, that the plaintiff should have been permitted to recover in the action of ejectment, because the proof showed that James J. Flinn was the owner of the lots—had a perfect equity, having paid the purchase-money,—and that plaintiff had purchased his interest at sheriff's sale. Under section 2455 of the Code, a perfect equity is liable to levy and sale under execution.

Whether the right or claim of James J. Flinn to the lots in controversy is a perfect equity within section 2455 of the Code, it is not necessary in this case that we should decide. The question has not been fully argued, and we deem it more prudent not to express an opinion.—See Shields v. Lyon, Min. 278; Gillespie v. Sommerville, 3 S. & P. 447; Lewis v. Moorman, 7 Por. 522; Edmundson v. Montague, 14 Ala. 371; Crabb v. Pratt, 15 Ala. 843.

A purchaser at a sheriff's sale acquires only the title and interest of the defendant in execution.—See authorities in Shep. Dig. 635, §§ 76, 77, 78, 86; also, Elmore v. Harris, 13 Ala. 360; McKinney v. McKinney, 5 Ala. 719; Land v. Hopkins, 7 Ala. 115; Lang v. Waring, 17 Ala. 145; Wilson v. Beard, 19 Ala. 629. The most that can be affirmed of James J. Flinn's title is, that it was a perfect equity, and, therefore, only an equitable title. The plaintiff, You, if he acquired all the title which James J. Flinn had owned, had still but an equitable title. This, under our system, will not support an ejectment.—See Code, § 2129; Trammell v. Simmons, 17 Ala. 411; Sellers v. Hayes, 17 Ala. 749; Seabury v. Stewart, 22 Ala. 207; Cook v. Webb, 18 Ala. 810. See, also, West v. Foreman, 21 Ala. 400; Savage v. Walsh, 26 Ala. 619; Jackson v. Morse, 16 Johns. 196; Williams v. Hartshorn, 30 Ala. 211.

We are aware that, in New York, a different rule as to

the sale of resulting trusts under executions at law, is said to prevail.—Jackson v. Leggett, 7 Wend. 377; Jackson v. Lorm, 4 Cow. 599; Foote v. Colvin, 3 Johns. 216. Such is not the law of Alabama. ·

Judgment of the circuit court affirmed.